# Bergman *versus* Roberts.

1. In an appeal from proceedings before a justice, under the Act of April 3d 1830 (Landlord and Tenant), to recover possession from a tenant for non-payment of rent, on the plea "*non demisit,*" the plaintiff must prove his position as landlord.

2. Bergman, a tenant, being absent, his wife paid rent to Bell, as agent of Roberts, claiming to be landlord, and Bell gave her receipts.  On the trial evidence that Bergman on his return wrote across the receipts, that the money was obtained from his wife by deceit and was paid without his authority and said so to Bell and also said that he did not recognise Roberts as his landlord, was rejected.  *Held* to be error.

· 3. The payment of rent by the wife was not an attornment to Roberts by Bergman.

4. The receipts of the wife could operate only as acts of an agent of the husband, their effect as admissions of his tenancy was subject to be repudiated by the husband.

5. If a justice has no jurisdiction the Court of Common Pleas has none on appeal.

6. In a landlord and tenant case, the jurisdiction of a justice is ousted only where it appears by the evidence that the question of title arises between the landlord and tenant.

7. Bergman admitted tenancy under Smith, a former owner, but denied Roberts's right because he did not show title as successor to Smith.  This presented a question of title to sue as landlord, not of title to the premises, and the jurisdiction of the justice was not ousted.

February 1868.  Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ.  READ, J., at Nisi Prius.

Error to the Court of Common Pleas of *Philadelphia:* No. 173, to January Term 1869.

The proceeding in this case commenced under the Act of April 3d 1830, before an alderman, by Charles B. Roberts against Martin Bergman, to recover possession of leased premises for non-payment of rent.  The alderman gave judgment for the plaintiff, and the defendant, on the 15th of April 1867, appealed to the Court of Common Pleas.  He there pleaded that the plaintiff had not demised the premises to him; that there was no rent in arrear; that there were sufficient goods on the premises to pay the rent; and that no notice to quit had been served on him.

On the trial the plaintiff proved service of notice to quit, dated March 4th 1867, signed "William J. Bell, agent for Charles B. Roberts."

He gave evidence by the constable that he had a warrant of distress in his hands, signed by Bell, agent for Roberts, and went on to the premises to distrain; went through all the house except the cellar; and that the goods on the premises were not worth $200.

The plaintiff, under objection and exception, gave evidence by Henry Wilson that, while Bergman was in the army, witness went with William J. Bell to his house, and claimed rent as agent or

11 P. F. SMITH—32

[Bergman *v.* Roberts.]

owner, witness did not know which; Mrs. Bergman paid the rent and Bell gave her a receipt.

Henry Daily testified that he was present before Alderman McDonald at a suit; the parties were Bell, agent for Roberts, plaintiff, and Martin Bergman, defendant. The defendant produced a receipt-book, and claimed credit for the amount of the receipts, and said that he did not owe so much rent as he was sued for.

Defendant gave evidence that Bergman first rented from J. L. Smith, took possession and had been there ever since. He gave in evidence three receipts, two in February and one in March 1865, signed by J. L. Smith, "agent," amounting together to $11, "for rent." Also four receipts in September, November and December 1865; the first two signed "C. B. Roberts for W. J. Bell;" the other two, "W. J. Bell," together for $62. In the plaintiff's receipt-book, across the face of these four receipts, was written: "This money was obtained from my wife by deceit, whilst I was in the army, and was paid without authority from me. MARTIN BERGMAN."

The defendant offered to prove that as soon as defendant was informed of the payments of rent made by his wife he repudiated them, and said that he did not acknowledge either Bell or Roberts as his landlord, and that he told Bell the payments were made without his authority, and that they were obtained from his wife by deceit, in making her believe that he, Bell, had bought the property, and was the proper person to receive the rent. Also that the title to the property is in litigation, and has been so ever since Bergman went into possession, and that it is claimed by five or six different persons; and also that the defendant repeatedly refused to recognise either Roberts or Bell, and told them that they had no title, before and after the receipts given by Bell to Mrs. Bergman.

The offers were rejected, and several bills of exception sealed.

The court charged:— * *

"[The plaintiff is not entitled to recover in this action unless he satisfies you by the evidence in the cause that, at the time the proceedings were commenced, there was not sufficient goods (over and above the amount exempt from levy and sale) to pay the rent in arrear. I have been asked to say to you that to establish this, it was necessary to show that every portion of the premises were examined, and that as it appears the witness on this point did not examine the cellar, the plaintiff has failed to make out his case. I refuse to so instruct you, but say that it is a question of fact for you whether upon the whole evidence in the case there is enough to satisfy you that there was not enough goods to pay the rent in arrear over and above the amount which the tenant had a right to claim as exempt.] Unless you are satisfied of this, your verdict

[Bergman v. Roberts.]

should be for the defendant, but I refer it to you as a question of fact which you are to pass on. * *

" [I further instruct you that the question of title does not arise in this case. You have nothing to do with that. This is a proceeding between landlord and tenant, and the title is not the subject of investigation.] * * * [I have been asked to say to you that there is not sufficient evidence that Bell was ever authorized to act as agent for Roberts, or that his acts were ratified by Roberts. I refuse to give this instruction, but submit it to you as a question of fact whether he was so authorized or not."]

The verdict was " for the plaintiff."

The defendant took a writ of error, and assigned for error :—

1. The admission of the plaintiff's evidence, which was objected to.

2 and 3. Rejecting the defendant's offers.

4–6. The parts of the charge in brackets.

7. That the jury did not find the amount of rent in arrear.

*R. White* and *G. H. Earle*, for plaintiff in error, cited Act of April 3d 1830, § 1, Pamph. L. 187, Purd. 614, pl. 21; Clark *v.* Everly, 8 W. & S. 232; Connor *v.* Bradley, 1 Howard 217.

*J. C. Ferguson*, for defendant in error, referred to Act of 1830, *supra;* Hazen *v.* Culbertson, 10 Watts 393.

The opinion of the court was delivered, March 8th 1869, by

THOMPSON, C. J.—This case has some uncommon features. It commenced before an alderman to recover possession of certain alleged leased premises under the Act of 3d April 1830, for nonpayment of rent. The plaintiff claimed to be landlord of the premises, yet he gave no testimony of any letting by him to the defendant; nor of any rent reserved; nor that he was the successor in title to J. L. Smith, who he proved was the defendant's lessor; but contented himself with showing, that the defendant's wife paid rent to him as agent for one Bell at two several times, while the defendant was in the army; and to Bell as landlord on two other several times, and he claimed that this was an attornment to him as landlord by defendant's wife, as agent of her husband.

The defendant pleaded *non demisit;* thus throwing on the plaintiff the necessity of proving his position of landlord, which he attempted to do in the manner stated, by showing this act of alleged attornment on part of the wife, and that it was recognised by the husband by his claiming the benefit of the receipts, in a suit brought by Bell before an alderman, said to be for rent, the record of which does not seem to have been offered in evidence by the plaintiff. It is said that suit was in the name of Bell, agent

[Bergman *v.* Roberts.]

for Roberts. But Bell stood undeniably the plaintiff himself. In these circumstances the defendant offered Bell's receipt before the alderman. What became of the suit does not legally appear, but it may be presumed that the receipts were not admitted, as the defendant on his return home had written across them in his receipt-book his repudiation of the act by his wife. That transaction before the alderman, and the proof of the payments by the wife, thus repudiated, was the plaintiff's evidence of being the landlord of the premises.

It is apparent that the plaintiff could not get along with the acts of the wife as an attornment, for her payments were repudiated; and besides were so equivocal as not to indicate whom she had acknowledged as landlord, Bell or Roberts, supposing for argument's sake that her acts simply would amount to an attornment, although she was not informed of, or shown a title as landlord, against the repudiation of her husband; he was obliged to resort to what took place before the alderman in the suit of Bell against the defendant in order to show acquiescence. But we do not see that this made out the plaintiff's title as lessee. That was a suit between other parties—it was *res inter alios acta*. In answer to Bell's suit the defendant might set up his wife's payments for the purpose of recovering money wrongfully obtained from her, and most probably that was the object of his offer. Not as receipts for rent; they had been repudiated by defendant by a writing across them. Still they might be evidence to show money in the hands of the defendant which he ought to pay back. Much of this is speculation, it is true, or rather inference from the natural order of things, for the plaintiff, in regard to that suit, like the rest of his case, has taken seeming care to give as little testimony as possible—not even furnishing the transcript of the alderman in the case, as he was bound to do when he offered testimony in regard to the suit before him.

Standing thus, we think the court should have admitted the defendant's offer to prove that on his learning what had taken place on his return home in regard to the rent, between Bell and his wife, he repudiated her acts and communicated the fact to Bell, who acted for Roberts, as his receipt would indicate, as also for himself. As the wife's receipts could only operate as the acts of an agent of her husband, their effect as admission of tenancy under Roberts or Bell, or both, was subject to be denied or repudiated by her husband. It was the object of the offer of the defendant to show that he did repudiate them as early as possible after learning of them, by giving notice to Bell, who acted in collecting the money, and in giving the receipts, that her acts were unauthorized and repudiated by him. If, without such repudiation, acquiescence could have been inferred, it was important he should repudiate, and be permitted to prove the fact. It may be

[Bergman v. Roberts.]

that on another trial a different state of facts may show all this unimportant; for instance, by proof of title on part of plaintiff, as landlord by succession to the lessor's title, or in some other way, but we may not conjecture that this may be so, and refuse to correct errors in the trial which has taken place, because eventually a different state of facts may eventuate in producing a similar result to that which has already taken place. The plaintiff in error is entitled to a reversal if he shows prejudicial error. We think he has shown this in this rejection of his offer, and that the case must go down for retrial for this and other reasons.

We think, too, that there was no evidence to go to the jury of Bell's agency for Roberts. Besides signing the receipt spoken of as agent for Roberts, without any authority being exhibited for his so doing, the only other evidence is that of Henry Wilson, who testified that he went with Bell to Bergman's house, in the absence of the latter, and "Bell claimed rent, either as agent or owner, don't know which." This did not prove agency. There was error, therefore, in submitting this as a fact in the absence of evidence to go to the jury of the facts.

We are also of opinion that the court did, in its charge, assume the main point in contest against the defendant, viz.: that the plaintiff was the lessor of the defendant, either originally or by assignment of the term. No lease in writing was given in evidence. The point, if made out, was to be made out by inference, drawn from the receipts in evidence; it was, therefore, only the jury that could draw the inference. It was not for the court to do so.

But here it is proper to notice a question of jurisdiction which has been raised in the case. It is contended that the controversy about the plaintiff's right to recover as lessor or assignee of the term, involved a question of the title to the premises, and that this, on the principle of Clark v. Everly, 8 W. & S. 326, proves that the justice had no jurisdiction of the case originally, and that the Common Pleas had it not on appeal. Undoubtedly if the alderman had not jurisdiction the Common Pleas had not. This is settled in numerous cases, and by the case just cited, which was under the Act of 1830. But the rule of that case, followed by Essler v. Johnson, 1 Casey 350, is, that the jurisdiction is ousted only where it appears by the evidence in the case that the question of title arises between the party charged as tenant and the party claiming as landlord. As the tenant is not allowed to set up an outstanding title, the question of title must be such as is likely to affect himself. When that is the case, and it appears in the course of the trial, no matter by whose testimony, jurisdiction at once ceases. That is the doctrine of the cases just cited.

We think that was not the condition of this case. The defendant admitted his tenancy under Smith, but denied Roberts's right

[Bergman *v.* Roberts.]

to recover, because he did not show an assignment of the term or a title to the premises as successor to Smith, his landlord. This presented a question of title to sue as landlord, rather than a question of title to the premises; and hence we think there was nothing to *oust* jurisdiction by the alderman. Unlike the Act of 1772, jurisdiction of the justice or alderman is not to be set aside by the oath of the tenant, that the title to the land will come in question in proceedings to recover possession for non-payment of rent under the Act of 1830. In this portion of the case, we think, there is no error; nor do we see anything to correct in the other alleged errors, but in consequence of those pointed out, the case must go back for a new trial.

Judgment reversed, and *venire de novo* is awarded.